**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

*Connecticut Financial Center*  (203) 821-3700
*157 Church Street*
*New Haven, Connecticut  06510*  *Fax (203) 773-5373*

March 6,  2009

Kurt F. Zimmermann
Silverstein and Osach, P.C.
234 Church Street, Suite 903
New Haven, Connecticut 06510

      Re:    <u>**United States v. Bryan Thomas Black**</u>
             **Criminal No. 3:09cr          (EBB)**

Dear Mr. Zimmermann:

      This letter confirms the plea agreement entered into between your client, Bryan Thomas Black (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

      The defendant agrees to waive his right to be indicted and to plead guilty to a one-count Information charging him with Conspiracy to Commit Criminal Copyright Infringement (Title 17 United States Code Section 506(a) and Title 18 United States Code Section 2319), in violation of Title 18 United States Code Section 371.  The defendant also agrees to waive any and all venue claims with regard to the Information.  He understands that to be guilty of this offense, the following essential elements must be satisfied:

    (1)    that two or more persons entered into the unlawful agreement charged in the information;
    (2)    that the defendant knowingly and willfully became a member of the conspiracy;
    (3)    that one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the information; and
    (4)    that the overt act was committed to further some objective of the conspiracy.

## THE PENALTIES

      The offense of Conspiracy carries a maximum penalty of five (5) years' imprisonment.  In addition, under 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of not more than three (3) years, to begin at the expiration of any term of imprisonment imposed.  The defendant understands that, should he violate any condition of supervised release during its term, he may be required to serve a further term of imprisonment of up to two (2) years with no credit for time already

spent on supervised release.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100.00 on each count of conviction.  The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Finally, unless otherwise ordered, should the Court impose a fine of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of any fine amount not paid within fifteen (15) days after the judgment date.  18 U.S.C. § 3612(f).  Other penalties and fines may be assessed on the unpaid balance of a fine pursuant to 18 U.S.C. §§ 3572 (h), (i) and 3612(g).

<ins>Restitution</ins>

In addition to the other penalties provided by law, the Court may also order that the defendant make restitution under 18 U.S.C. §3663A.  The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution.  Restitution is payable immediately unless ordered otherwise by the Court.

<ins>Forfeiture</ins>

Under 17 U.S.C. § 506(b), the Court must order forfeiture of all infringing copies of copyrighted works and all implements, devices, and equipment used in the manufacture, reproduction, or distribution of such infringing copies, including but not limited to the items listed in *"Attachment A"* to this agreement.  The defendant agrees that all such items, which were seized from his custody or control on April 21, 2004, shall be subject to forfeiture and destruction or other disposition.  The defendant represents that he is the sole owner of such items or that, to the extent he is not the sole owner, he obtained the items from third parties involved in the conspiracy whose whereabouts the defendant does not know.  The defendant agrees to assist the government in its defense against any third-party claims that may be asserted with respect to the referenced items to be forfeited.  The defendant further agrees to waive the provisions of Federal Rules of Criminal Procedure 7(c)(2) and 32.2, and to execute any additional papers or agreements as necessary to accomplish the purposes of this paragraph.

The Defendant agrees to consent to any criminal, civil, or administrative forfeiture brought against the properties described above pursuant to 17 U.S.C. § 509(a).  The Defendant waives service of process or notice in any such civil proceeding and agrees that an order for forfeiture may be entered in said civil proceeding without further notice or hearing.

The Defendant agrees that forfeiture of the Defendant's assets shall not be treated as satisfaction of any fine, restitution, costs of imprisonment, or any other penalty this Court may

impose upon the Defendant in addition to forfeiture.

The defendant understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. §2465(b)(1).

## **THE SENTENCING GUIDELINES**

### Applicability

The defendant understands that, although application of the United States Sentencing Guidelines is not mandatory, the Sentencing Guidelines are advisory and the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case.  See United States v. Booker, 125 S.Ct. 738, 543 U.S. 220 (2005).  The defendant expressly understands that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report.  The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's Adjusted Offense Level under section 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense.  Moreover, the Government intends to file a motion with the Court pursuant to section 3E1.1(b) of the Sentencing Guidelines recommending that the Court reduce defendant's Adjusted Offense Level by one additional level based on the defendant's prompt notification of his intention to enter a plea of guilty.  This recommendation is conditioned upon the defendant's full, complete, and truthful disclosure to the Probation Office of information requested of the circumstances surrounding his commission of the offense, of his criminal history, and of his financial condition by submitting a complete and truthful financial statement.  In addition, this recommendation is conditioned upon the defendant timely providing complete information to the Government concerning his involvement in the offense to which he is pleading guilty.  The defendant expressly understands that the Court is not obligated to accept the Government's recommendation on the reduction.

The Government will not make these recommendations if the defendant engages in any acts which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release.  Moreover, the Government will not make this recommendation if the defendant seeks to withdraw his plea of guilty.  The defendant expressly understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make this recommendation.

Stipulation

Pursuant to section 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not purport to set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant expressly understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The Government and the defendant stipulate to the following guidelines calculation from the 2003 Sentencing Guidelines Manual based on the defendant's participation in the offense. The base offense level for Criminal Copyright Infringement under U.S.S.G. § 2B5.3(a) is eight (8). Twelve (12) levels are added under U.S.S.G. §§ 2B5.3(b)(1) and 2B1.1(b)(1)(G) for a loss between $ 200,000 and $ 400,000. Another two (2) levels are added under U.S.S.G. § 2B5.3(b)(2) because the offense involved the uploading of infringing items, resulting in an adjusted offense level of twenty-two (22). Assuming the defendant meets all of the requisite conditions, three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of nineteen (19). Based on the information available to the Government at this time, including the representations of the defendant, the defendant's Criminal History Category is I. At an offense level of nineteen (19) and a Criminal History Category of I, the range for imprisonment is 30 to 37 months and the fine range is $6,000 to $60,000.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline and fine ranges specified above. The defendant further expressly understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside the Guideline range or fine range set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to challenge or defend any sentencing determination, other than that stipulated by the parties, in any post-sentencing proceeding.

Appeal Rights Regarding Sentencing

The parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by statute.

### Information to the Court

The Government expressly reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to its file, with the exception of grand jury material.

## WAIVER OF RIGHTS

### Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant expressly acknowledges that he is knowingly and intelligently waiving his right to be indicted.

### Waiver of Trial Rights and Consequences of Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, and the right to compulsory process for the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant understands and agrees that should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees

to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right To Post-Conviction DNA Testing of Physical Evidence

The defendant understands that the Government has various items of physical evidence in its possession in connection with this case that could be subjected to DNA testing. The defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of physical evidence pursuant to 18 U.S.C. § 3600 and § 3600A in an attempt to prove his innocence. The defendant fully understands his right to have all the physical evidence in this case tested for DNA, has discussed this right with his counsel, and knowingly and voluntarily waives his right to have such DNA testing performed on the physical evidence in this case. Defendant fully understands that because he is waiving this right, the physical evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

### Waiver of Challenges to Venue

The defendant expressly acknowledges that he is knowingly and intelligently waiving any challenges to venue under Federal Rule of Criminal Procedure 18.

## ACKNOWLEDGMENT OF GUILT; VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter and in the letter of understanding "concerning the defendant's cooperation with the Government"), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant expressly acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. The

defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek reasonable attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

-7-

The defendant acknowledges and understands that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant understands and acknowledges that this agreement has been
reached without regard to any civil tax matters that may be pending or which may arise involving him.

**COLLATERAL CONSEQUENCES**

The defendant further understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

**SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH**

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the conduct, which forms the basis of the information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

**NO OTHER PROMISES**

Apart from any written Proffer Agreement and a letter of understanding "concerning the defendant's cooperation with the Government," the defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court and filed in this case.

> Very truly yours,
>
> NORA R. DANNEHY
> ACTING UNITED STATES ATTORNEY
>
> /s/ Edward Chang
>
> EDWARD CHANG
> ASSISTANT UNITED STATES ATTORNEY

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_/s/_____          _____
BRYAN THOMAS BLACK                          Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_/s/_____          _____
KURT ZIMMERMANN, ESQ.                       Date
Attorney for the Defendant

STIPULATION OF OFFENSE CONDUCT

The defendant, Bryan Thomas Black ("defendant"), and the Government stipulate and agree to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the information:

1.  The defendant was a participant in the "warez scene" -- an underground online community comprised of individuals and organized groups who engage in the large-scale duplication, modification, reproduction, and distribution of copyrighted software over the Internet, in violation of federal copyright law.  The leading warez participants and warez groups compete with one another to attain the reputation as the fastest, highest-quality provider of "pirated" software -- that is, computer software, games, movies, and music files that have been "cracked" (i.e., had their copyright protections removed or circumvented).  The defendant was commonly known in the warez scene by his nickname "DMX."

2.  An individual's involvement in the warez scene can take place through a number of activities.  Certain participants obtain access to copyrighted software, games, movies, and music; other participants crack the digital copyright protections on those works; and yet others test the pirated software – known as "warez" – for functionality and repackage the digital files for widespread dissemination.  In addition, "couriers" distribute the pirated software to various file storage sites ("File Transfer Protocol" or "FTP" sites) on the Internet for others to access, reproduce, and further distribute.  And yet others are responsible for the systems administration, site operation, or hosting of such FTP sites.

3.  FTP is a communication protocol for transferring files between computers connected to the Internet.  FTP sites – also known as FTP servers – are computers connected to the Internet that serve as large storage facilities for software or other digital files which, in turn, may be copied and downloaded by users of the site through the FTP protocol.  In the warez scene, FTP sites are most often used to store and crack copyrighted software and other digital media and to host, collect, distribute, and trade illegal warez.  These sites are not accessible to the general public.  Access to FTP warez sites is typically controlled through a variety of security mechanisms.  For example, a user is typically required to log on to the FTP site using a screen name and password approved by one of the system administrators for the FTP site.  In most cases, the final level of authentication, which is done automatically, requires the user to attempt access to the FTP warez server only from a specific, authorized Internet Protocol ("IP") address previously supplied to the system administrator(s).  Failure to meet any of the security requirements results in a denial of access to the FTP server.

4.  Warez groups compete with one another to be the first to release new pirated software to the warez community for unauthorized reproduction and distribution worldwide. Preparing new pirated software for release and distribution to the warez scene generally requires a number of different steps.  First, an individual known as a "supplier" will post an original copy of new computer software or other digital media to an FTP server on the Internet known as a "drop site."  Frequently, "suppliers" are company insiders, software

testers, or reviewers who can provide final versions of new product before it is released to the general public. Once the new supply is posted to the "drop" site, another individual, known as a "cracker," retrieves the software and removes or otherwise circumvents its copyright protection controls, including serial numbers, tags, duplication controls, and/or security locks. Once successfully cracked, the software is tested and packed for final posting to the "drop site," where it is picked up by couriers for rapid distribution to other warez sites worldwide and, eventually, reaches public distribution channels such as publicly-accessible websites or online auctions. The entire process – from the initial appropriation of the copyrighted work to its worldwide pirated distribution – can, and typically does, occur within a matter of hours.

5. Active participants in the release and distribution process are rewarded in a variety of ways, often with privileged access to large, non-public caches of pirated works on warez FTP sites. With this access, a user may be able to download vast amounts of pirated software for personal use or further distribution.

6. Within the warez scene there exists a handful of groups that enjoy a reputation as the fastest and most successful providers of illegal copies of digital works over the Internet. Of these elite warez groups, a group known as "Fairlight" has been one of the oldest and best-known in the warez scene worldwide. Fairlight (which is also known by the initials "FLT") has been in existence and has operated since at least the mid-1990s through April 2004, and is credited with having disabled or "cracked" copyright protection controls on some of the most popular and highest-valued computer games in the entertainment software industry.

7. In addition to conducting its own software and media piracy activities directly, Fairlight serves as an umbrella organization to several other subsidiary warez groups, including "Kalisto," "Class," "Echelon," "GAME," and "ProjectX." Each of these subsidiary groups specializes in a particular type of pirated game software. For example, "ProjectX" specializes in the piracy of software for Microsoft's Xbox game console, whereas "Echelon" specializes in the piracy of DVD software for Sony's PlayStation2 console. Many, although not all, of the individual members of these subsidiary groups are also members of Fairlight. In all cases, the members of the subsidiary groups answer to the leadership of Fairlight (known as the "seniors"), who have the ultimate authority to control the membership and operations of each group.

8. From in or about 2001 through in or about April 2004, the defendant was a participant in the warez scene and had access to several warez FTP sites from which he downloaded pirated software and other digital media. The defendant is a member of a prominent warez group known as "Kalisto." The defendant, using the nickname "dmx," provided services to "Kalisto" by removing the media protections from copyrighted software titles to be uploaded to FTP sites.

9. Over the course of his participation in the conspiracy, the defendant was aware that his co-conspirators uploaded thousands of pirated copyrighted works to the warez FTP sites identified as "House of Moo" ("HOM"); Datastream ("DS"); Firesite Drop ("FSDrop");

        Fireside ISO ("FSISO"); Fireside ISO Archive ("FSISO Archive");  and UCF (a/k/a UCFE, a/k/a "Pimp") with the knowledge and intent that, through these sites, those copyrighted works would be further accessed, reproduced, and distributed by additional co-conspirators.  As of March 25, 2004, the UCF site alone contained in excess of 6,000 pirated software titles.

10. In addition to the activities set forth above, since at least 2001, and in furtherance of the above conspiracy, the defendant downloaded thousands of pirated copies of copyrighted works from various warez sites.  A substantial number of these software titles were computer and video games.  At some point in time relevant to this conspiracy, the defendant became aware that his and his coconspirators' actions were unlawful.

11. Transfer logs from one warez FTP server indicate that, between September 4, 2002 and February 5, 2004, the defendant using the screen name "dmx" uploaded and downloaded in excess of 600 software and media titles from that FTP server during that 17-month time period.  The titles uploaded and downloaded include such well-known movies, games, and utility software as "Tom Clancy's Rainbow 6" (PC game), "NCAA Final Four 2004" (console game), "Microsoft Longhorn Build 4029" (utility), and "Kill Bill" (movie).  The log files for that same server also captured the IP address assigned to the computer from which "dmx" uploaded files or to which "dmx" downloaded files when transferring software, games, and/or movies to and from the FTP server.

12. On several occasions between at least as early as August of 2003 and April 2004, the defendant, either alone or in concert with co-conspirators, disabled media protection controls on copyrighted video games in order to enable the video games to be played by warez participants.  The defendant did so with an expectation of receipt of other pirated works, and with the knowledge that his actions and those of his co-conspirators were unlawful.

13. On or about April 21, 2004, as part of this investigation, the defendant's residence was searched by agents of the Federal Bureau of Investigation.  Numerous items, including computers belonging to the defendant and containing warez related material and used to disable media protections on copyrighted software were seized from the defendant's residence.

-12-

14. Based on the investigation to date, between $200,000 to $400,000 in losses are attributable to the defendant as relevant conduct.

The written stipulation above is incorporated into the preceding plea agreement. It is understood, however, that the defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

___/s/_____          _____
BRYAN THOMAS BLACK                                           Date
The Defendant


___/s/_____          _____
KURT F. ZIMMERMANN, ESQ.                                Date
Attorney for the Defendant


___/s/_____          _____
EDWARD CHANG                                                    Date
Assistant United States Attorney

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § §3663A. The order of restitution may include:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

   The greater of -

   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.


2. In any case, reimburse the victim for lost income and necessary child care, transportation,
and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the court ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court. See 18 U.S.C. §3614. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.

## ATTACHMENT "A"

The Defendant agrees to forfeit to the United States immediately and voluntarily all of the computer equipment, video equipment, electronic equipment, and software seized from his residence on April 21, 2004, including but not limited to:

One Acer disk drive;
One Westall ADSL Internet Access Modem, bearing serial no. 02B404371832;
One LINSYS Cable DLS Router, bearing serial no. 02220CA04896;
One Performance multiplayer adaptor, bearing serial no. M4000;
One 120 GB Hard Drive;
One Linsksys Broadband Router, bearing serial no. C2760CA71371E1;
94 Empty CD cases;
One Microsoft X-Box, bearing serial no. 397223234506;
One Microsoft DeBug Kit, bearing serial no. 200338513302;
One Microsoft X-box, bearing serial no. 300230614102;
One PS2, bearing serial no. FU754893;
One PS2, bearing serial no. AS1078965;
One PS2, bearing serial no. PY565634177;
One PS2, bearing serial no. U4686036;
One PS2, bearing serial no. PX346682267;
188 original PS1 games;
248 copied PS1 games;
89 copied PS2 games;
416 copied PS2 games;
One X-box, bearing serial no. 209369614903;
One PS1 game;
192 original PS2 games;
128 original X-box games;
86 copied PS2 games;
256 copied PS2 games;
355 copied X-box games;
One Sony Development Tool, bearing serial no. R303028;
Two Quantum game controllers;
23 game controllers;
One Sony PS, bearing serial no. 9RA228337;
74 original PS2 games;
Two code breakers;
One USB Busdrive;
40 original PS2 games;
60 original PS games;
50 original PS2 games;
205 empty CD cases;

## ATTACHMENT "A" CONTINUED

One PS2, bearing serial no. U5520466;
One PS2, bearing serial no. U1384079;
One PS2, bearing serial no. J2390142;
One PS2, bearing serial no. FS263882;
264 original PS1 games;
264 original PS2 games;
206 copied PS1 games;
272 original PS1 games;
One Compaq Presario computer, bearing serial no. 9132DGZZ0472;
One Fujitsu Computer Siemens, bearing serial no. 9144YZ10043100049SK0;
One Sony Vaiq computer, bearing serial no. 28552030;
One Compaq Presario computer laptop, bearing serial no. 6D12JC52817J;
One Hewlett Packard Pavilion, bearing serial no. US95052312;
One HP Media Center PC, bearing serial no. NMXK3400BJS;
One Viewsonic VX 900 Monitor, bearing serial no. VLCDS26105-2W;
One Viewsonic VX 900 Monitor, bearing serial no. A24031836799;
One Compaq Presario computer, bearing serial no. 9137CGWZ0147;
One Hewlett Packard Pavilion, bearing serial no. US94456509
One Viking Interworks USB drive 128 MB;
One Attache PNY 64 MB USB Flash Drive;
One Samsung 128 MB Flash Drive 2.0;
One Transcend Jet Flash 120 MB;
One Memorex 128 MB;
One Kang Grum Micro Drive 2.0 Flash Drive 64 MB;
One External tape drive-iomega ZIP (2) z100 USB;
One Microsoft mouse;
One Linsksys broadband router;
One Remote Control X-box; and
One Universal Programmer, bearing serial no. 04961.

End of Attachment A.