UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 3:09 cr 056 (EBB) |
| v. | : | |
| | : | |
| | : | |
| BRYAN BLACK | : | August 14, 2009 |

**BRYAN BLACK'S MEMORANDUM IN AID OF SENTENCING
AND REQUEST FOR *NON-GUIDELINE* SENTENCE**

The following discussion is respectfully submitted on behalf of Bryan Black,

defendant, to assist the Court in fashioning a sentence which is sufficient but not

greater than necessary to satisfy the goals of sentencing as required by 18 U.S.C.

§3553 ["§3553"]. It is submitted that, due to several sentencing factors present in the

nature and circumstances of the offense as well as certain aspects of the history and

characteristics of Bryan Black, the Court should impose a non-guideline sentence of

probation. The sentencing hearing is scheduled to commence at 9:00 a.m., Tuesday,

August 18, 2009. There are not any factual issues in dispute and the undersigned does

not anticipate offering any witness-testimony or any other evidence at the sentencing

hearing. The offense and the absolute absence of any history of criminal conduct have

been stipulated to yield a Guidelines range of 30-37 months. It is the position of the

defendant that a sentence within this range would be grossly excessive under §3553

and that a sentence of probation be imposed in Bryan Black's case, as has been done

by the Court in all of the related cases which were processed in the District of

Connecticut.

*The pre-sentence report*

Bryan Black, with undersigned counsel, has reviewed the pre-sentence report ["PSR"] and the defendant does not have any objections to the PSR's substantive conclusions and findings.  The defendant and the government have entered into a comprehensive written plea agreement which includes a stipulation of offense conduct as well as a stipulated, proposed, calculation under the Sentencing Guidelines. The defendant and the PSR have utilized the Guidelines Manual with an effective date of November 1, 2008. As a matter of observation and not really an objection to the PSR, it is noted that the PSR's proposed Guidelines calculation of the offense level contains a typographical error:  At paragraph 24 of  the PSR, the text reads that "the defendant's offense level is increased *fourteen* to reflect an infringement amount of more than $200,000 but less than $400,000."  The calculation in paragraphs 24-31 of the PSR then applies an enhancement of 12 (not 14). The sentencing table,  particularly Guideline §2B1.1(b)(1)(G),  provides for a 12-level enhancement for the stipulated dollar amount. The word "fourteen" appearing in paragraph 24 is incorrect and should be changed to read "twelve".

*The Nature and Circumstances  Offense*

The PSR at paragraphs 1-20 provides the Court with a detailed and thorough description of the offense for which Mr. Black and the defendants in the related cases were investigated and prosecuted.  The factors that appear in the PSR which are most significant to the determination of the sentence necessary, it is submitted, are set forth at paragraphs 20, 61, and 64 of the PSR where it is noted that "there is no identifiable

loss in this case";  that a departure may be warranted as the offense level may overstate the seriousness of the offense, Guideline §2B5.3, comment, n.4 ; and, that "the nature of [Bryan Black's]  involvement ... is mitigated to a degree by the absence of a monetary motivation."  It is also apparent from the comprehensive description of the offense and all of the participants' roles that Bryan Black's function was less serious than his fellow "warez" scene members. Bryan Black was a "cracker" and as such he disabled certain codes in the software in video games thereby making it easier for other members of the warez group to access,  play and succeed at solving the video games they downloaded from the group's FTPs.  "Cracking" of codes is not necessarily illegal: as noted at paragraph 63 of the PSR, the line was crossed when the defendants plied their skills to gain and provided unauthorized access to copyrighted video games.

***The history and characteristics of Bryan Black***

The PSR has provided a comprehensive picture of Bryan Black's upbringing, family, education, and employment history.  The seminal factors here are that Bryan Black has never had any prior run-ins with the law; he is apparently very gifted in the field of computer software, programming and computer security; he is self-taught in this field and his participation in the warez scene was driven by the intellectual challenge presented by the codes and a sense of membership in a collection of like-minded computer-heads on the internet.

*Section 3553 sentencing analysis*

It is also important to the Court's determination under §3553 that Bryan Black began assisting the FBI's Computer Crime and Intellectual Property task force immediately after his arrest (five years ago). He assisted in the investigation of the co-participants in this scheme as well as assisted in the detection of other such activities.  During the four years between his arrest and plea, Bryan Black dedicated many, many hours to working with various FBI agents.  It is anticipated that a motion pursuant to Guideline §5K1.1 is forthcoming.  Please note that this case and the group of related prosecutions brought in the District of Connecticut are all products of the Department of Justice's Computer Crime Task Force. All of these copyright infringement cases were charged and sentenced in the District of Connecticut even though none of the defendants reside in Connecticut.  The undersigned negotiated the terms of the guilty plea in Bryan Black's case with Clement McGovern, Senior Counsel,  Assistant Deputy Chief for Litigation, Computer Crime and Intellectual Property Section, Criminal Division, United States Department of Justice, Washington, D.C.  It was Attorney McGovern who indicated that a §5K1.1 motion would be filed in recognition of Bryan Black's efforts to assist FBI Agent Watson (among others) in the government's enforcement efforts. As of this writing it is not clear that the government in D.C. and the United States Attorney in Connecticut are "on the same page" regarding the §5K1.1 motion to be filed.  However, as was noted in the reasons given for the sentences of probation imposed by the Court in the District of Connecticut in numerous other cases (See PSR paragraph 3 where the other cases are identified along with the probationary sentences imposed as a non-guidelines sentence or pursuant to a §5K1.1 departure. Copies of several of the Judgments are attached to this memo.)

The Court can account for the defendant's efforts to cooperate and assist the government without a formal §5K1.1 motion in its non-guideline analysis pursuant to §3553. The defendant's agreement to cooperate and assist all bears directly upon the determination of  whether or not incarceration is necessary to advance the sentencing goals of just punishment, respect for the law, general and specific deterrence, etc.   It is of course the defendant's position that his decision in this regard provides a clear and compelling indication that the §3553 purposes of sentencing can be achieved without the need for a prison sentence.

One of the driving forces behind the promulgation of the Guidelines was the perceived need to avoid unwarranted disparity in federal sentencing.  Here, of course, there are no factors present which warrant a sentence in Bryan Black's offense that is any more harsh than the probationary sentences imposed in the related cases.  Indeed, it is submitted that the factors noted above mitigate in favor of and fully warrant a less harsh, disparate sentence in Bryan Black's case than those sentences which the Court has imposed in the related cases.

***Changed financial condition: Ability to pay a fine in the range***

When the PSR was authored, Bryan  Black's finances were considerably more secure than they presently are.  The PSR concludes, at paragraph 50 that  the defendant is able to pay a fine within the range. The fine range is $6,000-$60,000 (PSR par. 58) .This conclusion is no doubt based upon the defendant's then net worth of $97,800 which, in turn, is made up primarily of the $67,000 in equity in the defendant's residence.  Since the time that the financial information was submitted to Probation by the defendant,  the

market value of the Blacks' residence has declined significantly such that the equity in the residence has evaporated. The residence was purchased by Mr. and Mrs. Black at a time when both were employed.  However, both of the Blacks are currently unemployed and struggling to get a new video game retail business off the ground.  The residence was recently refinanced.  The PSR notes that the Blacks were operating at a negative cash flow of over $2,000 each month.  This was funded by savings (now depleted), Mrs. Black's pay (now gone), and the proceeds from the recent refinancing (also gone).  The bank holding the mortgage on the residence has initiated or is threatening to initiate foreclosure.  A set of updated financial statements is being prepared by the defendant and will be submitted to the Court prior to sentencing. It will be clear from this current information that the defendant is not able to pay a fine within the range.

### *Conclusion*

For all of the foregoing reasons, it is respectfully submitted that a sentence of probation will be sufficient to satisfy all of the purposes of federal sentencing under §3553.

Respectfully submitted
Bryan Black, Defendant

/s/ Kurt F. Zimmermann
Kurt F. Zimmermann (ct00581)
Silverstein & Osach, P.C.
234 Church Street, Suite 903
New Haven, CT 06510
203-865-0121 (tele)
203-865-0255(fax)
kzimmermann@so-law.com

6

## **CERTIFICATION**

This is to certify that the foregoing MEMORANDUM IN AID OF SENTENCING was electronically filed with the Court's EM/ECF system and a chamber's copy was delivered to Judge Burns' office on August 14, 2009.


/s/ Kurt F. Zimmermann
Kurt F. Zimmermann